# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON HARRIS, on his own behalf and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-06024 |
| v. | ) ) | |
| CHICAGO TRANSIT AUTHORITY, | ) ) | |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

For his COMPLAINT against Defendant, CHICAGO TRANSIT AUTHORITY ("CTA" or "Defendant"), Plaintiff BRANDON HARRIS ("Harris or "Plaintiff"), on his own behalf and on behalf of all others similarly situated, alleges and avers as follows:

## INTRODUCTION

1.      Plaintiff is a former CTA bus operator who has sincerely held religious beliefs against the COVID-19 vaccines because they were either developed from, or tested upon, aborted fetal cells lines, and for other religious reasons that were explained to Defendant. Because of Defendant's unlawful actions in denying Plaintiff's meritorious religious exemption request, Plaintiff faced an immediate "choice" to either (a) receive a COVID-19 vaccination in direct violation of his conscience and sincerely held religious beliefs, or (b) be terminated from his employment with the CTA.

2.      Plaintiff held true to his religious beliefs and was terminated by the CTA along with hundreds of other similarly situated CTA employees.

3.     This is a class action suit brought to remedy the rights of the Plaintiff and hundreds of other CTA employees as a result of Defendant's failure to comply with federal and state laws protecting the religious liberty rights of employees.

## PARTIES

4.     Plaintiff Brandon Harris, age 43, is a former bus operator for the Defendant CTA.

5.     Defendant Chicago Transit Authority is an independent governmental agency which operates the nation's second largest public transportation system in Chicago and 35 surrounding suburbs.

## JURISDICTION AND VENUE

6.     This action arises under the laws of the United States, specifically, the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq,* and the First and Fourteenth Amendments to the United States Constitution.

7.     This action also arises under the laws of the State of Illinois, specifically the Illinois Religious Freedom Restoration Act, 775 ILCS 35, *et seq*, the Illinois Health Care Right of Conscience Act, 745 ILCS 70, *et seq*; and the Illinois Human Rights Act, 775 ILCS 5/2-102.

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343, and 1367.

9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1)(2) because Defendant is headquartered in the Northern District of Illinois, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

10.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

**A.    BACKGROUND**

11.    Plaintiff Brandon Harris began working for the Defendant Chicago Transit Authority in October 2015 as a part-time bus operator.

12.    In July 2017, Harris became a full-time bus operator with the CTA.

13.    At all relevant times during his employment with the CTA, Harris was a dedicated employee who earned positive reviews from his employer.

14.    Beginning in early 2020, a global outbreak of a virus now referred to as COVID-19 began to emerge.

15.    COVID-19 was officially declared a pandemic by the World Health Organization in March 2020.

16.    At that time, great efforts were made by the public and private sector alike to develop a vaccine.

17.    To combat the spread of the virus, public health experts opined that the public should practice social distancing, wear masks, and isolate if showing symptoms of COVID-19. Employers across the country began requiring employees to practice these measures, and many also began permitting remote work.

18.    The U.S. Food and Drug Administration eventually granted Emergency Use Authorization for a COVID-19 vaccine, the Pfizer-BioNteach vaccine, on December 11, 2020. The Moderna vaccine was granted Emergency Use Authorization on December 18, 2020, followed by the Johnson & Johnson vaccine on February 27, 2021.

19.     With vaccines available to the general public, employers began to mandate that employees get vaccinated or else suffer adverse employment action such as being placed on unpaid leave or being terminated.

20.     The CTA did not initially require that employees obtain a COVID-19 vaccine. Throughout most of the pandemic, the CTA allowed its employees to continue working by encouraging safety measures such as masking and social distancing.

21.     Plaintiff, like many other CTA employees, continued to work throughout the pandemic and were viewed as essential workers and eventually proclaimed as the "unsung heroes of the pandemic" by CTA President Dorval R. Carter, Jr.[1]

22.     Clearly, Plaintiff's ability to work without a vaccine mandate throughout most of the pandemic did not cause the CTA any undue hardship.

**B.      THE CTA's MANDATORY COVID-19 VACCINATION POLICY**

23.     On September 3, 2021, the CTA for the first time announced, approximately 10 months after the first vaccine was authorized, that all CTA employees were required to be fully vaccinated against COVID-19.

24.     At that time, CTA President Mr. Carter, Jr. proclaimed that employees had to be vaccinated in order to "help fight off these variants and protect our loved ones and others who cannot be vaccinated."[2]

---

[1] https://www.transitchicago.com/chicago-transit-board-approves-contract-with-largest-cta-union/
[2] https://www.transitchicago.com/cta-will-require-all-employees-to-receive-covid-19-
vaccination/#:~:text=CTA%20Will%20Require%20All%20Employees%20to%20Receive%20COVID%2D
19%20Vaccination,-
September%203%2C%202021&text=In%20the%20latest%20step%20to,fully%20vaccinated%20against%20
COVID%2D19.

25. The CTA President Mr. Carter, Jr. made that proclamation even though the COVID-19 vaccines were not tested, designed, or made to prevent transmission of COVID-19.

26. Indeed, two months prior to the CTA's vaccine mandate, the CDC released a study which found that vaccinated individuals still spread the virus and stated that there was "no significant difference in the viral load present in the breakthrough infections occurring in fully vaccinated people and the other cases, suggesting the viral load of vaccinated and unvaccinated persons infected with the coronavirus is similar."[3]

27. The mandatory COVID-19 Vaccination Policy also did not take into account individuals who have already recovered from COVID-19 and thus had antibodies or natural immunity, nor did it take into account alternative measures such as face coverings, personal protective equipment, self-monitoring and reporting of symptoms, or periodic testing.

28. The CTA's mandatory COVID-19 Vaccination Policy was at odds with the Federal government's policy allowing certain large employers to mandate vaccination *or* periodic testing for their employees.

29. The CTA's mandatory COVID-19 Vaccination Policy also differed substantially from the European Union's digital COVID-19 certificate, which considered the following as equivalent: (1) a COVID-19 vaccine; (2) a negative COVID-19 test; or (3) having previously recovered from COVID-19. *See EU Digital COVID Certificate*, EUROPEAN COMMISSION, https://ec.europa.eu/info/live-work-travel-eu/coronavirus-response/safe-covid-19-vaccines-europeans/eu-digital-covid-certificate_en.

---

[3] https://www.npr.org/sections/coronavirus-live-updates/2021/07/30/1022867219/cdc-study-provincetown-delta-vaccinated-breakthrough-mask-guidance

30.     The CTA has claimed, and still claims, to offer religious exemptions and accommodations, stating on their "Careers" website the following:

> "The CTA complies with all federal and state laws forbidding discrimination and will attempt to provide a reasonable accommodation to otherwise qualified individuals to enable them to perform the essential functions of the job. CTA will make reasonable accommodations for the known disabilities of otherwise qualified applicants for employment as well as its employees, unless undue hardship would result. . . . CTA will work with you to determine if an accommodation can be provided.
>
> . . .
>
> If you are an applicant requesting a COVID-19 vaccine religious accommodation or other, please email the Equal Employment Opportunity Unit at EEODiversity@transitchicago.com."[4]

31.     In order to obtain a religious exemption from the mandatory COVID-19 Vaccination Policy, employees have to complete a "Request For Religious Exemption/Accommodation Related to COVID-19 Vaccine."

32.     On September 28, 2021, Plaintiff completed and submitted his religious exemption, which is attached to this pleading as **Exhibit A**.

33.     In his religious exemption application, Harris cited to five passages from the Holy Bible which describe his religious views. Harris also informed CTA of his religious pro-life views and that he could not participate in abortions, and by extension the COVID-19 vaccines, which are all connected to aborted fetal cells. (Harris has also consistently refused the flu vaccine for similar reasons).

34.     The religious exemption request was further supported by a letter from Plaintiff's minister who also explained "we hold that the use of any product containing or derived from the remains of unborn babies terminated by abortion is absolutely forbidden and that knowingly

---

[4] https://www.transitchicago.com/careers/

accepting such a product into one's body is to become an accessory to murder, subject to the full force of Biblical law (Proverbs 28:17; 1 Samuel 3:12)."

35.     Despite the clear explanation of Plaintiff's religious beliefs, on November 8, 2021, the CTA emailed Harris another form to fill out, once again asking him to explain his religious beliefs and also asking him to explain what accommodation he was seeking.

36.     The CTA's letter instructed Harris to respond within seven calendar days from receipt of the request and that "Failure to respond promptly may result in a delay in the assessment of your religious accommodation request."

37.     Plaintiff did not initially see the email from the CTA requesting additional information and by the time he found the correspondence, the seven days had already lapsed. Plaintiff eventually submitted his additional response on December 14, 2021. **Exhibit B.**

38.     On December 24, 2021, Plaintiff tested positive for COVID-19 and fully recovered soon thereafter.

39.     On January 10, 2022, the CTA emailed Harris informing him that the Religious Accommodation Review Committee reviewed his religious accommodation request, but because he did not respond to the additional requests made by the CTA within the seven days allotted, his request was denied outright.

40.     The outright denial of the religious exemption request is at odds with the CTA's previous representation that failing to respond within seven days may result only in a "delay."

41.     The seven days allotted by the CTA to receive such responses was purely arbitrary and had no legal significance.

42.     Harris continued to hold true to his beliefs and continued to refuse, and to this day has refused, to obtain a COVID-19 vaccine.

7

43.     Despite the CTA's insistence that every employee had to be vaccinated in order to work for the CTA, the CTA continued to employ Harris for an additional four months from the January 10, 2022 denial of the religious exemption request.

44.     Upon information and belief, other bus operators who applied for and were denied religious exemptions have not been terminated by the CTA and continue to operate buses to this day.

45.     On April 21, 2022, the CTA at last terminated Plaintiff, informing him that he was discharged for failing to be fully vaccinated. **Exhibit C.**

46.     Since Harris was terminated, companies across the U.S. as well as federal and local governments have lessened restrictions, and COVID-19 cases have dropped significantly. Indeed, on August 11, 2022, the Center for Disease Control and Prevention ("CDC") significantly revised its COVID-19 prevention recommendations. The CDC Guidance and recommendations "no longer differentiate based on a person's vaccination status.[5]" Thus, the new CDC Guidance uniformly applies the same recommendations for all individuals regardless of vaccination status.

47.     Yet, the CTA has continued to insist that employees be vaccinated and to deny employees like the Plaintiff reasonable exemptions and accommodations.

48.     Recent information obtained via FOIA shows that as of June 2022, 573 CTA employees have applied for a religious exemption, and only 36 have been approved. That is an approval rate of just 6.28%.

---

[5] https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm

49.     And although the CTA has remained firm on its vaccine policy, it has not mandated that employees receive any boosters, even though health experts have opined that the effect of a vaccine wanes and that non-boosted individuals pose a risk because they are not up to date.

50.     As a result of the CTA's actions, Plaintiff, and hundreds of others employees, have sustained damages including, but not limited to, lost income, lost bonuses, lost insurance, lost company benefits, career changes with lesser pay, emotional distress, and trauma.

### C.     PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS

51.     Plaintiff has sincerely held religious beliefs that precludes him from complying with the mandatory COVID-19 Vaccination Policy because of the connection between all three COVID-19 vaccines (in their origination, production, development, or testing), and the cell lines of aborted fetuses, or other similar religious beliefs.

52.     A fundamental component of Plaintiff's sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

53.     Plaintiff's sincerely held religious beliefs, rooted in Scripture, precludes him from accepting any one of the three currently available COVID-19 vaccines, because all three vaccines were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

54.     Plaintiff has a sincerely held religious objection to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it unquestionably used aborted fetal cells lines to produce and manufacture the vaccines.

55.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine

produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (bold emphasis original).

56.     The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used PER.C6 fetal cell line, "is a retinal cell line that was **isolated from a terminated fetus in 1985**." Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021) (emphasis added).

57.     Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. *Meredith Wadman*, *Vaccines that use human fetal cells draw fire*, Science (June 12, 2020), *available at* https://science.sciencemag.org/content/368/6496/1170.full (last visited Aug. 2, 2021).

58.     Plaintiff also has a sincerely held religious objection to the Moderna and Pfizer/BioNTech COVID-19 vaccines because both of these vaccines, too, have their origins in research on aborted fetal cells lines.

59.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the

development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (emphasis added).

60. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021).

61. In addition, Plaintiff has a sincerely held religious belief that his body is the temple of the Holy Spirit, and to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the Temple of the Holy Spirit. (*See 1 Corinthians* 6:15-20 ("Know ye not that your bodies are the members of Christ? shall I then take the members of Christ and make them members of an harlot? God forbid. . . . What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's." (KJV)).

62. Plaintiff has shared these religious beliefs, and others, with the CTA, and has asked the CTA for an exemption and reasonable accommodation for these beliefs, but CTA has refused.

11

### D. PLAINTIFF'S WILLINGNESS TO COMPLY WITH ALTERNATIVE SAFETY MEASURES

63.     Plaintiff has always been willing to comply with all other reasonable alternatives to compliance with the mandatory COVID-19 Vaccination Policy.

64.     Plaintiff was willing to and would have complied with all requirements to wear a mask, if necessary, as a part of the reasonable accommodation for his sincerely held religious objection to the mandatory COVID-19 Vaccination Policy.

65.     Plaintiff was willing to and would have complied with surveillance testing protocols as part of his reasonable accommodation for his sincerely held religious objection to the mandatory COVID-19 Vaccination Policy.

66.     Plaintiff was willing to and would have complied with all self-monitoring, self-reporting, or other reasonable safety protocols to monitor and report any sign of symptoms or other issues, as part of his reasonable accommodation for his sincerely held religious objection to the mandatory COVID-19 Vaccination Policy.

67.     Plaintiff was willing to and would have complied with any reasonable request to accomplish his pursuit of obtaining a reasonable accommodation for his sincerely held religious objection to the mandatory COVID-19 Vaccination Policy.

### E. CLASS ALLEGATIONS

68.     Plaintiff brings this class action under Federal Rules of Civil Procedure 23(a) and (b).

69.     Through this action, Plaintiff seeks to represent a class of all CTA employees who have requested or will request religious exemptions and accommodations from the mandatory COVID-19 Vaccination Policy and who have had those requests unlawfully denied.

12

70. The class is so numerous that joinder of all members is impractical. Based on FOIA information obtained by counsel, the exact class size appears to be 537.

71. There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

    a. Did the CTA comply with federal and state law when it denied religious exemption and accommodation requests to the vast majority (94%) of those who applied?

    b. Did the CTA have an undue hardship to deny the vast majority of religious exemption requests?

    c. Did the CTA violate federal and state law when it granted some religious exemption requests, and provided for some reasonable accommodations, even while denying Plaintiff's similar requests?

    d. Did the CTA comply with its obligations under federal law to engage in the interactive process when responding to each exemption request?

    e. Did the CTA provide an adequate mechanism for requesting and obtaining a religious exemption when it provided employees only seven days to provide additional information beyond the initial exemption request, and failed to consider any evidence if not received within that small timeframe?

72. Plaintiff's claims are typical of the claims of the class because he, like the class members, requested exemption and accommodation from the mandatory COVID-19 Vaccination Policy, and the CTA denied those requests.

73. For the same reason, Plaintiff will fairly and adequately protect the interests of the class.

74.     The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating Plaintiff's claims. Joinder of all members is impracticable.

## COUNT I – VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*

75.     Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1-74 as if fully set forth herein.

76.     Title VII of the Civil Rights Act of 1964 prohibits the CTA from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a)

77.     Plaintiff holds sincere religious beliefs that preclude him from receiving a COVID-19 vaccine.

78.     Plaintiff informed the CTA of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

79.     The CTA failed to provide Plaintiff with a religious exemption and reasonable accommodation, thereby discriminating against Plaintiff because of his religious beliefs.

80.     The CTA did not, and does not, have any undue hardship to justify the denial of Plaintiff's religious exemption request.

81.     The CTA's failure to provide religious exemptions and accommodations has harmed and will continue to harm the Plaintiff.

82.     Plaintiff has filed a charge with the EEOC[6] complaining of these discriminatory actions, has received a "Right to Sue" letter, and is filing this lawsuit within 90 days thereof. **Exhibit D**.

WHEREFORE, Plaintiff respectfully prays for relief against the CTA as set forth in the Prayer for Relief set out below.

## COUNT II – VIOLATION OF THE FIRST AMENDMENT FREE EXERCISE CLAUSE

83.     Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1-74 as if fully set forth herein.

84.     The Free Exercise Clause of the First Amendment to the United States Constitution (made applicable to the states by the Fourteenth Amendment) provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. CONST. amend. I.

85.     The CTA's mandatory vaccine policy substantially burdened Plaintiff's free exercise of religion by unlawfully conditioning his employment on Plaintiff abandoning his religious beliefs.

86.     The CTA's mandatory vaccine policy was not neutral and generally applicable as the CTA granted at least 36 religious exemption requests, but denied a similar request by the Plaintiff.

87.     The CTA engaged in a process of individualized assessments when it reviewed requests for religious exemptions and accommodations.

---

[6] His charge was filed at the Illinois Department of Human Rights, but the charge was cross-filed at the EEOC.

88.     The CTA's termination of the Plaintiff cannot be justified by a compelling governmental interest and is not narrowly tailored to advance any such interest.

WHEREFORE, Plaintiff respectfully prays for relief against the CTA as set forth in the Prayer for Relief set out below.

## COUNT III – VIOLATION OF FOURTEENTH AMENDMENT EQUAL PROTECTION

89.     Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1-74 as if fully set forth herein.

90.     The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons alike.

91.     The CTA has violated Plaintiff's right to equal protection by granting religious exemption requests to some similarly situated employees but denying the same to him.

92.     The CTA has violated Plaintiff's right to equal protection by continuing to employ certain bus operators that are not vaccinated but refusing to continue to employ the Plaintiff on an equal basis.

93.     Under the Equal Protection Clause, government actions and laws which burden a fundamental right and treat persons unequally based on an inherently suspect classification are subject to strict scrutiny.

94.     The CTA cannot satisfy strict scrutiny.

WHEREFORE, Plaintiff respectfully prays for relief against the CTA as set forth in the Prayer for Relief set out below.

16

## COUNT IV – VIOLATION OF THE ILLINOIS HEALTH CARE RIGHT OF CONSCIENCE ACT, 745 ILCS 70

95.     Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1-74 as if fully set forth herein.

96.     The Illinois Health Care Right of Conscience Act (the "Act") protects Plaintiff's rights to engage in the exercise of his sincerely held religious beliefs without fear of discrimination from any entity, whether public or private, including the CTA.

97.     In fact, the State of Illinois has declared it to be the public policy of the State to protect the religious conscience rights of all individuals in the State of Illinois as it relates to health care services. The Illinois Health Care Right of Conscience Act provides, specifically,

> The General Assembly finds and declares that people and organizations hold different beliefs about whether certain health care services are morally acceptable. **It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care whether acting individually, corporately, or in association with other persons; and to prohibit all forms of discrimination, disqualification, coercion, disability or imposition of liability upon such persons or entities by reason of their refusing to act contrary to their conscience or conscientious convictions in providing, paying for, or refusing to obtain, receive, accept, deliver, pay for, or arrange for the payment of health care services and medical care**. It is also the public policy of the State of Illinois to ensure that patients receive timely access to information and medically appropriate care.

745 ILCS 70/2 (emphasis added).

98.     In furtherance of the State of Illinois public policy of protecting the religious conscience rights of all Illinoisans to exercise their sincere religious convictions in their medical decision-making, the Illinois Health Care Right of Conscience Act states:

> **It shall be unlawful for any** person, public or **private institution**, or public official **to discriminate against any person in any manner**, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or **any other privileges**, **because of such person's**

17

> **conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care services contrary to his or her conscience**.

745 ILCS 70/5 (emphasis added).

99.     The Illinois Health Care Right of Conscience Act further provides:

> **It shall be unlawful for any public or private** employer, entity, agency, **institution**, official or person, including but not limited to, a medical, nursing or other medical training institution, to deny admission because of, to place any reference in its application form concerning, to orally question about, to impose any burdens in terms or conditions of employment on, or to otherwise discriminate against, any applicant, in terms of employment, **admission to or participation in any programs for which the applicant is eligible, or to discriminate in relation thereto, in any other manner, on account of the applicant's refusal to receive, obtain, accept, perform, counsel, suggest, recommend, refer, assist or participate in any way in any forms of health care services contrary to his or her conscience.**

745 ILCS 70/7 (emphasis added).

100.     The Illinois Health Care Right of Conscience Act defines "Health care" broadly to include vaccinations. Specifically, it provides that "Health Care":

> means **any phase** of patient care, including but not limited to, **testing**; diagnosis; **prognosis**; ancillary research; **instructions**; family planning, counselling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures; **medication**; surgery or **other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility**, **intended** for the **physical**, emotional, and mental well-being of persons.

745 ILCS 70/3 (a) (emphasis added).

101.     The Illinois Health Care Right of Conscience Act defines "Conscience," as "a sincerely held set of moral convictions arising from belief in or relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." 745 ILCS 70/3(e).

102.     A violation of the Illinois Health Care Right of Conscience Act provides for the following remedies:

18

> **Any person, association, corporation, entity or health care facility injured by any public or private person, association, agency, entity or corporation by reason of any action prohibited by this Act may commence a suit therefor, and shall recover threefold the actual damages, including pain and suffering, sustained by such person, association, corporation, entity or health care facility, the costs of the suit and reasonable attorney's fees; but in no case shall recovery be less than $2,500 for each violation in addition to costs of the suit and reasonable attorney's fees. These damage remedies shall be cumulative, and not exclusive of other remedies afforded under any other state or federal law.**

745 ILCS 70/12 (emphasis added).

103.    The Illinois Health Care Right of Conscience Act acts as a super statute in Illinois, preempting and superseding all other acts and portions of acts that conflict with the explicit policies contained in the statute.

104.    Specifically, the Illinois Health Care Right of Conscience Act states: "This Act shall supersede all other Acts or parts of Acts to the extent that any Acts or parts of Acts are inconsistent with the terms or operation of this Act." 745 ILCS 70/14.

105.    Even as a public institution, the CTA is subject to the provision of the Illinois Health Care Right of Conscience Act under 745 ILCS 70/5 and 745 ILCS 70/7, and is therefore prohibited from discriminating against Plaintiff for his refusal to accept one of the vaccines on account of his sincerely held religious beliefs.

106.    Plaintiff's sincerely held religious beliefs, which were articulated to the CTA under the signed written requests required by the mandatory COVID-19 Vaccination Policy, constitutes Plaintiff's "conscience" under the Act because they are "a sincerely held set of moral convictions arising from belief in or relation to God." 745 ILCS 70/3(e).

107.    The COVID-19 vaccines constitute "Health care" under the Act because they are a "phase of patient care," "medication," and "other care or treatment rendered by a physician or

19

physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional, and mental well-being of persons." 745 ILCS 70/3(a).

108.    The Act does not provide any defense to discriminate against Plaintiff based on so-called "undue hardship." *Rojas v. Martell*, 2020 IL App (2d) 190215, ¶ 43.

109.    By imposing its mandatory COVID-19 Vaccination Policy upon Plaintiff and refusing to grant him a religious exemption and reasonable accommodation from the mandatory COVID-19 Vaccination Policy, the CTA has impermissibly, unlawfully, and unconscionably discriminated against Plaintiff because of his conscientious refusal to receive or accept one of the three currently available COVID-19 vaccines in contradiction to his rights of conscience and sincerely held religious beliefs.

110.    By taking adverse employment action against the Plaintiff for failure to comply with the mandatory COVID-19 Vaccination Policy, the CTA has impermissibly discriminated against the Plaintiff on account of his sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of 745 ILCS 70/5.

111.    The mandatory COVID-19 Vaccination Policy, on its face and as applied, is a gross violation of Plaintiff's sincerely held beliefs, and his right of conscience under the Illinois Health Care Right of Conscience Act.

112.    The mandatory COVID-19 Vaccination Policy, on its face and as applied, is an impermissible discrimination against Plaintiff on the basis of his sincerely held religious beliefs, and in violation of Plaintiff's rights of conscience under the Illinois Health Care Right of Conscience Act.

WHEREFORE, Plaintiff respectfully prays for relief against the CTA as set forth in his Prayer for Relief set out below.

## COUNT V – VIOLATION OF THE ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT

113.     Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1-74 as if fully set forth herein.

114.     The Illinois Religious Freedom Restoration Act provides:

"Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest."

(775 ILCS 35).

115.     The CTA's mandatory vaccine policy substantially burdened Plaintiff's exercise of religion by conditioning his employment on Plaintiff abandoning his religious beliefs.

116.     The CTA cannot meet its burden of demonstrating that its termination of the Plaintiff, and others similarly situated, was in furtherance of a compelling governmental interest and that it was the least restrictive means of furthering that interest.

WHEREFORE, Plaintiff respectfully prays for relief against the CTA as set forth in his Prayer for Relief set out below.


## COUNT VI: VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

117.     Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1-74 as if fully set forth herein.

118.     The Illinois Human Rights Act provides:

It is a civil rights violation: …[f]or any employer to impose upon a person as a condition of …retaining employment…any terms or conditions that would require such person to violate or forgo a sincerely held practice of his …religion…unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to

21

reasonably accommodate the employee's….sincerely held religious belief, practice or observance without undue hardship on the conduct of the employer's business."

775 ILCS 5/2-102(E-5).

119.     The CTA's mandatory Vaccination Policy imposed upon Plaintiff a condition of employment that required him to violate or forgo his sincerely held religious beliefs.

120.     Plaintiff informed the CTA of those beliefs and requested an exemption from the vaccine mandate.

121.     The CTA denied his exemption request without engaging in a *bona fide* effort to determine whether an accommodation was possible.

122.     Granting his exemption would not have caused the CTA undue hardship.

123.     The CTA's actions have harmed and will continue to harm the Plaintiff.

124.     Plaintiff filed a charge with the Illinois Department of Human Rights complaining of these discriminatory actions, received a "Right to Sue" letter on August 4, 2022, and is filing this lawsuit within 95 days thereof. **Exhibit E**.

WHEREFORE, Plaintiff respectfully prays for relief against the CTA as set forth in the Prayer for Relief set out below.

## **JURY DEMAND**

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief as follows:

A.  That the Court certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b).

22

B. That this Court render a Declaratory Judgment declaring that the CTA's mandatory COVID-19 Vaccination Policy, both on its face and as applied by the CTA, is illegal and unlawful under Title VII, 42 U.S.C. § 2000e, *et seq.*; the Free Exercise Clause of the First Amendment to the United States Constitution; the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; the Illinois Religious Freedom Restoration Act; the Illinois Health Care Right of Conscience Act, 745 ILCS 70/5 and 745 ILCS 70/7; and the Illinois Human Rights Act and further declaring that:

  a. by terminating Plaintiff from employment with the CTA, the CTA has unlawfully discriminated against the Plaintiff, and others similarly situated, on account of sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines.

C. That this Court award Plaintiff and those similarly situated actual damages in an amount to be proven at trial (but not less than $2,500 per violation, as provided by 745 ILCS 70/12), and treble damages as provided by 745 ILCS 70/12, including those for emotional distress and pain and suffering, that Plaintiff sustained as a result of the CTA's unlawful mandatory COVID-19 Vaccination Policy.

D. That this Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

E. That this Court retain jurisdiction over the matter for the purposes of enforcing the Court's order.

F. That this Court award Plaintiff the reasonable costs and expenses of this action, including reasonable attorneys' fees, as required by 745 ILCS 70/12 and Title VII.

G. That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully Submitted,

/s/ Julie Herrera

Law Office of Julie O. Herrera
159 N. Sangamon St., Ste. 200
Chicago, IL 60607
312-479-3014 (Phone)
708-843-5802 (Fax)
www.julieherreralaw.com
jherrera@julieherreralaw.com

Date: 11/1/22

/s/ Sorin A. Leahu

Leahu Law Group, LLC
53 W. Jackson Blvd, Suite 1527
Chicago, IL 60604
Telephone: (847)-529-7221
sleahu@leahulaw.com

Date: 11/1/22

EXHIBIT A

**cta**

# Chicago Transit Authority

**REQUEST FOR RELIGIOUS EXEMPTION/ACCOMMODATION RELATED TO COVID-19 VACCINE**

The CTA is committed to providing equal employment opportunities without regard to any protected status and a work environment that is free of unlawful harassment, discrimination and retaliation. As such, the CTA is committed to complying with all federal, state and local laws protecting employees' religious beliefs and practices. When requested, the CTA will provide an exemption/reasonable accommodation for employees' sincerely held religious beliefs and practices which prohibit the employee from receiving a COVID-19 vaccine, provided the requested accommodation is reasonable and does not create an undue hardship for the CTA or pose a direct threat to the health and/or safety of others in the workplace and/or to the requesting employee.

To request a religious exemption/accommodation related to the CTA's COVID-19 vaccination policy, please fully complete and submit this form and return it to: eeodiversity@transitchicago.com.

The information provided will be used by the CTA's EEO Unit or other CTA personnel to engage in an interactive process to determine eligibility for and to identify possible accommodations. If any employee refuses to provide such information, the employee's refusal may impact the CTA's ability to adequately understand the employee's request or effectively engage in the interactive process to identify possible accommodations.

## Part 1 – To Be Completed by Employee:

**Name:** Brandon Harris    **Badge No.** 57766

**Date of Request:** 9-28-2021    **Work Location:** 74TH Street Garage

**Contact Information: (Phone #)** 708-940-1214

**Email address:** Kingharris1v2yahoo.com

**Supervisor/Manager Name:** Onasis Lewis

In some cases, the CTA may need to obtain additional information and/or documentation about your religious practice(s) or belief(s). We may need to discuss the nature of your religious belief(s), practice(s) and accommodation with your religion's spiritual leader (if applicable) or religious scholars to address your request for an exemption.

**Please explain below why you are requesting an Exemption/Accommodation:**

As a member of The Glorious Miracle Temple World Outreach Ministries a non-denominational church our practice and beliefs are protection from viruses, diseases through the power of prayer. We believe God the Father, Jesus the son and the Holy Spirit will keep us as long as we remain obedient to the word (Bible) Jeremiah 33:6 Job 5:18, 1Corinthians 10:13, Mark 1:34, Psalms 91:11 and many other scriptures teaches this. I am also Prolife and do not participate in abortions which the virus carries aborted

**Please provide any additional documentation to support this request.** fetuses. HEK 293, PER C6
which is murder
*Copies of support documentation may be uploaded along with this form if submitting electronically, or attached to the form if submitting in person.*

## Verification and Accuracy

I verify that the information I am submitting in support of my request for an exemption/accommodation is complete and accurate to the best of my knowledge, and I understand that any intentional misrepresentation will subject me to all applicable CTA rules, regulations, policies and procedures regarding falsification and resulting disciplinary actions.

I also understand that my request for an exemption/accommodation may not be granted if it is not reasonable, if it poses a direct threat to the health and/or safety of others in the workplace and/or to me, or if it creates an undue hardship on the CTA.

Employee's Signature: _Brandon Harris_

Employee's Printed Name: _Brandon Harris_

Date: _9-28-2021_

## Part 2 – To be Completed by EEO Unit Representative:

Date Request Received by the EEO Unit: _____

Interactive Discussion Date(s) if applicable: _____

Exemption/accommodation Granted?   ☐ Yes   ☐ No

Describe exemption/accommodation:



If the exemption/accommodation is granted, list the required alternative safety precautions required:



If exemption/accommodation not granted, explain why?



Signature of EEO Unit Representative: _____

Printed Name: _____

Title: _____   Date: _____

The Glorious Miracle Temple World Outreach Ministries
P.O. Box 1463
Calumet City IL. 60409

Declaration and Doctrine of on Government Health Mandates Including Vaccines.
The Glorious Miracle Temple World Outreach Ministries policy on governmental
mandatory edicts rests upon two pillars as its foundation:

The Bible as the inerrant Word of God, and America's Bible-based founding
documents, the Declaration of Independence, and the Constitution, both of
which honor the liberty of individuals to pursue their own happiness subject
to the revealed guidance of God and, among other things, to determine for
themselves what, if any, health measures they wish to pursue.

Our Church, The Glorious Miracle Temple World Outreach Ministries believes in
the absolute sovereignty of God in all things, and His delegation of
authority to human beings over the control of their own minds and bodies
(Colossians 1:16-17; 1 Corinthians 6:19-20).

We believe we possess both the God-given ability to reason and the gift of
free will to make our own choices regarding our lives, inclusive of our
health and well-being, and that individuals should be the ones to make their
own decisions pertaining to any and all medical services and medications,
including all decisions regarding vaccines no matter what
conditions—including pandemics—may be present.

The choice to use or accept any forms of external intervention to address any
mental or physical health problem remains a sacred personal right,
notwithstanding the opinion of other people, including medical professionals
and government officials.

Regarding the question of Covid 19 vaccines and other emerging medical
technologies, we hold that the use of any product containing or derived from
the remains of unborn babies terminated by abortion is absolutely forbidden
and that knowingly accepting such a product into one's body is to become an
accessory to murder, subject to the full force of Biblical law (Proverbs
28:17; 1 Samuel 3:13).

Furthermore, any medical product designed to alter one's genetic code or to
create a "biometric" or comparable mark or other identifier by which one can
be tracked by government or its agents is also absolutely forbidden as a
surrender to idolatry. If such mark is not technically the Mark of the Beast
warned against in Scripture, it is so close in form and substance as to be at
least preliminary preparation for it, if not a binding spiritual substitute
(Revelation 19:20; 1 Corinthians 8:4-7).

In summary, we recognize only God as our ultimate authority in all things,
and that He has delegated to each of us authority over our own lives and
choices in matters of health, including that of vaccines, and we hold that
the serious, potentially eternal consequence attaching to our choices,
strongly outweighs any dictate of government to the contrary

Founder/President
Apostle John H. Miles Sr.
Senior Pastor Brenda Miles

## The Bill of Rights

THE BILL OF RIGHTS IS THE FIRST 10 AMENDMENTS Of THE CONSITUTION , IT SPELLS OUT
AMERICAN RIGHTS IN RELATION TO OUR GOVERNMENT , IT GUARANTEES CIVIL RIGHTS AND
LIBERTIES TO A INDIVIDUAL WHICH INCLUDES FREEDOM OF SPEECH, PRESS, AND RELIGION,
IT SPECIFIES THAT ENUMERATION IN THE CONSTITUTION OF CERTAIN RIGHTS SHALL NOT BE
CONSTRUED TO DENY OR DISPARAGE OTHERS RETAINED BY THE PEOPLE, IT SETS RULES FOR
DUE PROCESS OF LAW AND RESERVES ALL POWER NOT DELEGATED TO THE FEDERAL
GOVERNMENT TO THE PEOPLE OF THE STATES.

## Fw: Brandon Harris Badge #57766

EXHIBIT B

----- Forwarded Message -----
**From:** "Brandon Harris" <kingharris1v@yahoo.com>
**To:** "EEO Diversity" <eeodiversity@transitchicago.com>
**Sent:** Tue, Dec 14, 2021 at 9:53 PM
**Subject:** Brandon Harris Badge #57766

**cta**

567 West Lake Street

**Chicago Transit Authority**
Chicago, Illinois 60661-1465
TEL 312-664-7200

12/8/2021

Harris, Brandon
Badge No. 57766

Sent via: Electronic Communication to:
kingharris1V@yahoo.com

Dear Brandon:

CTA's Equal Employment Opportunity (EEO) Unit received your request for Religious Accommodation or Moral Conviction. To make an appropriate determination of your request, we require the following information

1.  Briefly explain the connection between your sincerely held religious belief or moral conviction to your refusal to take the COVID19 vaccine.

    The Bible teaches us that any relation to abortion is an affront to God Jeremiah 20:17, Proverbs 28:17, Psalm 10:8, Psalm 106:38 and 1 Corinthians 6:19-20 all speaks about abortion. The vaccines initially used aborted fetal cell lines therefore I cannot allow it to enter my body My main concern is that of my salvation. I am trusting in God

2.  Apart from taking the vaccine, what accommodation are you requesting? Please be specific. *The accommodation is the practice that will be put into place should your request be approved. A request that you do not take the COVID19 vaccine is not an accommodation in and of itself.*

    N/A

Please provide the above-requested information within seven (7) calendar days from receipt of this request. Failure to respond promptly may result in a delay in the assessment of your religious accommodation request.

If you have any questions or concerns, you may contact the EEO Unit at 312-681-2610 or email EEODiversity@transitchicago.com .

**Sent by the EEO Unit of the Chicago Transit Authority**

Sent from Yahoo Mail on Android

EXHIBIT C — Page 1 of 2

*Chicago Transit Authority*
**Interview Record**



## Interview Details

| | | | |
|---|---|---|---|
| Employee Name: | Harris, Brandon T. | Badge Number: | 57766 |
| Run #: | | Date: | 03-23-2022 |
| Route Number: | | Vehicle Number: | |
| Direction: | | | |
| Location: | 1815 W 74th St, Chicago, IL 60636, USA | | |
| Interview Type: | Behavioural | | |
| Missed Hours: | 0:00 | Reported Hours: | 0:00 |
| Worked?: | No | Called: | 0:00 |
| Interview Date: | 04-21-2022 | | |
| Interview Start Time: | 9:30 | | |
| Reference: | 2022-74-BO-00546 | | |
| Performance Type: | Behav. Viol. | | |
| Incident Type: | Behavioral Viol | | |
| Blind Case #: | | | |

## Policy Details

As a result of the event(s) shown above, 1.0 points were added under this policy. This brings the total accumulation to 1.0 and resulted in the administrative action(s) shown below. Details of the total accumulation are shown in the table to the right.

| Accumulation Within This Period | |
|---|---|
| Date Charged | Points |
| 03-23-2022 | 1.0 |

| Bulletins Violated |
|---|

| System Rules Violated |
|---|

| SOPs Violated |
|---|

| General Rules Violated |
|---|
| 14(d),14(e),14(x),24,7(a),7(b),7(c) |

| Employee Comments |
|---|
| The operator states they are not taking the shot and will not be in compliance |

| Manager Comments |
|---|
| Your performance is not in keeping with CTA standards and is a demonstration of poor judgment in the execution of your duties and responsibilities. All CTA employees were required to become fully vaccinated and upload their proof of vaccination record to the Employee Self- Service Portal by November 1, 2021 to be in compliance with CTA's Mandatory Employee COVID-19 Vaccination Policy. You failed to do so. Thereafter, you were given additional time to come into compliance. You are not fully vaccinated. According to our records, you have failed to provide proof of full vaccination on the Employee Self Service Portal nor do you have a pending request for an accommodation. You are out of compliance with CTA's Mandatory Employee COVID-19 Vaccination Policy. It is imperative that all employees follow policy set forth by the Authority. Your actions are not in keeping with the rules set forth by the Authority and were detrimental to CTA. As a result, your department management has determined that your continued employment with the Authority is not beneficial to the CTA or the public we serve. We therefore inform you that effective April 21, 2022 your employment with the Chicago Transit Authority is terminated. |

| Decision Details | |
|---|---|
| Manager's Decision | Action Taken |
| Employee will be charged | Referral to GM for Discharge |
| Employee Advised of Medical Provider? | Action Taken By |
| Yes | ABetts |

Date Employee is to Report Back to Work

Signature of Action Initiator

_Anthony Betts_

SDO

Signature of Employee

_Refused to Sign/Given a Copy_

Union Representative

Thur, Fri

Date 4/21/2022



**CHICAGO TRANSIT AUTHORITY**

567 West Lake Street
Chicago, Illinois 60660

April 12, 2022

Brandon Harris
Badge No. 57766
Bus Operator/74th Street Garage
Entered Service Date:  July 16, 2017

## NOTICE OF DISCHARGE

Your performance is not in keeping with CTA standards and is a demonstration of poor judgment in the execution of your duties and responsibilities. All CTA employees were required to become fully vaccinated and upload their proof of vaccination record to the Employee Self- Service Portal by November 1, 2021 to be in compliance with CTA's Mandatory Employee COVID-19 Vaccination Policy. You failed to do so.  Thereafter, you were given additional time to come into compliance. You are not fully vaccinated.  According to our records, you have failed to provide proof of full vaccination on the Employee Self Service Portal nor do you have a pending request for an accommodation.  You are out of compliance with CTA's Mandatory Employee COVID-19 Vaccination Policy. It is imperative that all employees follow policy set forth by the Authority.  You are therefore in violation of at least the following CTA rules:

## September 13, 2021 Mandatory Vaccination Policy for All CTA Employees

### GENERAL RULES:

### Rule No. 7. (a, b, c)   Obedience to Rules

    (a)    All rules, orders, bulletins and instructions must be obeyed.

    (b)    Ignorance of the rules, orders, bulletins and instructions will not be accepted as an excuse for failure to comply.

    (c)    Violation is cause for disciplinary action.

### Rule No 14(d, e, x)   Personal Conduct

    (d)    Insubordination

    (e)    Conduct unbecoming an employee.

    (x)    Disrespect to supervisory personnel, co-workers or the public.

### General Rule No. 24 Use of Best Judgment
Should a situation requiring prompt action arise which is not covered by the rules in the General Rule Book, administrative procedures, special operating procedures, specialized rule books, executive orders, bulletins or instructions, the employees involved must use their best judgment in selecting the best course of action to follow, then report the action taken to the appropriate supervision as soon as possible thereafter.

Brandon Harris/Badge No. 57766
Notice of Discharge
Page 2 of 2

**Prior Discipline:**

On March 23, 2022, you were issued a Notice of Final Written Warning for not being in compliance with CTA's Mandatory Employee COVID-19 Vaccination Policy. Also, you were notified that failure to come into compliance may lead to further disciplinary action, up to and including discharge. You interviewed again on April 5, 2022 and had not come into compliance.

Your actions are not in keeping with the rules set forth by the Authority and were detrimental to CTA. As a result, your department management has determined that your continued employment with the Authority is not beneficial to the CTA or the public we serve. We therefore inform you that **effective April 21, 2022** your employment with the Chicago Transit Authority is terminated.

You are directed to immediately return any and all equipment issued to you by the Chicago Transit Authority, including keys and your employee identification card. You will be charged for any items not immediately returned.

Anthony Betts
General Manager
Bus Operations

Received: Brandon Harris, #57766

Received: ATU Local 241 – Rodney Taylor

cc: VP/GM (Bus Operations); Sr. Mgr./ OBM (Work Location) Labor Relations; VP Human Resources; Local 241; Personnel Records; B. Jansen

2

EXHIBIT D

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

October 12, 2022

Mr. Brandon Harris
c/o Julia O. Herrera, Esquire
Law Office of Julie O. Herrera
159 N. Sangamon Street
Suite 200
Chicago, IL  60607

Re:  EEOC Charge Against Chicago Transit Authority
        No. 21B202200689

Dear Mr. Harris:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

    The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                            Sincerely,


                            Kristen Clarke
                        Assistant Attorney General
                        Civil Rights Division


                by        /s/ Karen L. Ferguson
                        Karen L. Ferguson
                    Supervisory Civil Rights Analyst
                    Employment Litigation Section


cc: Chicago District Office, EEOC
    Chicago Transit Authority

EXHIBIT E

| STATE OF ILLINOIS | ) | |
|---|---|---|
| | ) | ss |
| COUNTY OF COOK | ) | CHARGE NO. 2022CF1424 |

## AFFIDAVIT OF SERVICE

Margaret Lindenberg, deposes and states that s/he served a copy of the attached **NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS, RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND ORDER OF ADMINISTRATIVE CLOSURE** on each person named below by depositing the same on ___August 4, 2022___, in the U.S. Mail Box at 555 West Monroe Street, Chicago, Illinois, properly posted for FIRST CLASS MAIL, addresses as follows:

For Complainant

Julie Herrera
Law Office of Julie O. Herrera
159 N. Sangamon St.
Suite 200
Chicago, IL 60607

For Respondent

Brad Jansen
Chicago Transit Authority
567 W. Lake St.
6th Floor
Chicago, IL 60661

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Margaret Lindenberg

**PLEASE NOTE:**

The above-signed person is responsible only for <u>mailing</u> these documents. Illinois Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Dismissal or Order of Closure has been issued.

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**

BRANDON HARRIS, )

                COMPLAINANT, )  CHARGE NO.    2022CF1424

AND )  EEOC NO.    21BA20689

CHICAGO TRANSIT AUTHORITY, )

                RESPONDENT. )

**NOTICE OF OPT OUT OF THE INVESTIGATIVE AND ADMINISTRATIVE PROCESS, RIGHT TO COMMENCE AN ACTION IN CIRCUIT COURT OR OTHER APPROPRIATE COURT OF COMPETENT JURISDICTION, AND ORDER OF ADMINISTRATIVE CLOSURE**

For Complainant

Julie Herrera
Law Office of Julie O. Herrera
159 N. Sangamon St.
Suite 200
Chicago, IL 60607

For Respondent

Brad Jansen
Chicago Transit Authority
567 W. Lake St.
6th Floor
Chicago, IL 60661

**Date Perfected Charge Filed:** Jun 6, 2022      **Date Opt Out Request Filed:** Jul 22, 2022

YOU ARE HEREBY NOTIFIED that pursuant to Section 7A-102(C-1) of the Illinois Human Rights Act (775 ILCS 5/7A-102(C-1)), Complainant having filed a written request to opt out of the Illinois Department of Human Rights' investigation and administrative processing of the above-captioned charge, the IDHR issues this Notice of Opt Out of the Investigative and Administrative Process, and the Right of Complainant to Commence an Action in the Circuit Court or other appropriate court of competent jurisdiction within 95 days from the date of this Notice and Order, as identified below.

- Complaint filed and serve a copy of the complaint to the Department and Respondent on the same date that the complaint is filed with the circuit court or other appropriate court of competent jurisdiction.
- Complainant may not file or refile a substantially similar charge with the Department arising from the same incident of unlawful discrimination or harassment.

NOW, THEREFORE, it is further hereby ORDERED that the Department cease the investigation and administratively close the charge of civil rights violation(s).

ENTERED ON August 4, 2022

DEPARTMENT OF HUMAN RIGHTS

BY: _____

Brent A. Harzman, Director
Charge Processing Division